## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

GARY SCOTT SETTLES                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:12CV-P368-H

KEVIN O. MCKINNEY 6875 *et al.*                                      DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Plaintiff Gary Scott Settles filed this *pro se* action under 42 U.S.C. § 1983 proceeding *in forma pauperis*.  Upon the initial review of the original complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court found that Plaintiff had stated no allegations against fifteen of the twenty-two officers named as Defendants in the complaint.  Those Defendants were therefore subject to dismissal.  However, due to the seriousness of the allegations, the Court allowed Plaintiff the opportunity to file an amended complaint to identify the officers whom he alleges violated his rights.  Plaintiff filed an amended complaint (DN 11), which is now before the Court for initial review pursuant to § 1915A and *McGore v. Wrigglesworth*, 114 F.3d at 604.  For the reasons that follow, the Court will allow some of Plaintiff's claims to proceed past initial screening and dismiss others.

### I.

Plaintiff is currently an inmate at the Fulton County Detention Center.  He sues the following twenty Louisville Metro Police Department (LMPD) police officers or detectives: Kevin O. McKinney; Steven W. Healey; Brian M. Wright; Chauncey T. Carthan; Aaron Browning; Erin M. Redfield; Brian Sherrard; Michael Fowler; Andre Bottoms; J.T. Duncan; Andrew M. Eichberger; Antoine Frye; Lee; William C. LeFlore; Barron Mourise Morgan; Keith Clifford Walz; Jimmy Harder; Darron Stone; Richard Pearson; and Kenton Buckner.  Plaintiff

also sues Louisville Mayor Greg Fischer and former LMPD Police Chief Robert White.  He sues each Defendant in both his or her individual and official capacities.

Plaintiff states that on July 20, 2011, he was driving his motorcycle accompanied by a passenger.  He states that he was being followed too closely by an unmarked LMPD police car driven by Defendant Wright.  He states that the police car was driving recklessly and dangerously.  When Plaintiff attempted to turn his motorcycle around in a driveway, several more unmarked police cars suddenly appeared.  To avoid being hit by one of the vehicles, he had to "lay the motorcycle down in the grass."  He states, "My passenger and I were clear of the motorcycle before it slowly rolled into a utility pole and fell over."  Plaintiff states, "The vehicles that could have easily killed [him and his passenger] turned out to be unmarked police vehicles.  There were no marked police vehicles and no blue lights or sirens were ever engaged."  He states that these actions amount to a "use of deadly force."  He states that the officers involved included Defendants McKinney, Healey, Wright, Carthan, Browning, Sherrard, Fowler, Bottoms, Duncan, Eichberger, Frye, Lee, LeFlore, Morgan, and Walz.  Plaintiff states these actions violate the Fourth and Eighth Amendments.

Plaintiff further states that he "was handcuffed and then struck in the left rear of my head, top (occiput) with an officer's pistol" by Defendant McKinney.  Plaintiff states that Defendant McKinney "injured his own hand when illegally striking me in the head with a pistol while concurrently screaming, 'Fleet Footed Mother F***er.'"  Plaintiff further states that Defendant McKinney later lied about his injuries and stated that Plaintiff had resisted arrest, "thereby making a false charge against me . . . ."  Plaintiff states these actions violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

2

Plaintiff states that he was then placed on the hot asphalt by Defendants McKinney and Wright and had to lay on the ground under an idling vehicle exposed to exhaust fumes causing burning in his eyes, skin, and lungs. He states that the officers intentionally placed his face under the exhaust with malicious intent in violation of the Fourth and Eighth Amendments.

Plaintiff also states that he was "repeatedly cursed at, threatened and taunted by officers." He states that he was "placed in great fear of physical harm or death." He states these officers were Defendants McKinney, Healey, Wright, Carthan, Browning, Sherrard, Fowler, Bottoms, Duncan, Eichberger, Frye, Lee, LeFlore, Morgan, and Walz. He states that this violated the Fourth, Eighth, and Fourteenth Amendments.

Plaintiff states that other officers stood by and watched and covered up the officers' mistreatment of him, violating the Fourth, Fifth, Eighth, and Fourteenth Amendments. He states that the officers were Defendants McKinney, Healey, Wright, Carthan, Browning, Sherrard, Fowler, Bottoms, Duncan, Eichberger, Frye, Lee, LeFlore, Morgan, and Walz.

Plaintiff states that he was then transported by ambulance to University Hospital. He states that Emergency Medical Services (EMS) records show that he was unconscious and unresponsive when he arrived at University Hospital. He states that he underwent triage, a CT scan, and other tests. He also states that he "endured a nurse fingering my rectum as she said, 'This will make him talk,' as police looked on. A catheter was administered. This was all very painful and degrading." He further states that a medical staff member told one of the detectives that his wound required staples but that the detective responded that Plaintiff did not need staples. Plaintiff states that he was not given the treatment he needed due to the detective's interference. He states that his hospital discharge papers showed that he received staples/sutures

3

but he did not.  Plaintiff further states that officers lied to EMS and hospital personnel about his injuries, which interfered with his treatment, endangered his life, and resulted in permanent injury.  He states these actions violated the Fourth, Fifth, Eighth, and Fourteenth Amendments. Plaintiff states that Defendants Browning and Fowler called for EMS "and obviously lied about the origins of my injuries."

Plaintiff also avers that Defendants Healey and Redfield conducted an illegal search of a residence and that police did not obtain a warrant or consent to search.  He asserts that police stated they had the residence under surveillance and that therefore they had time to secure a warrant.  He states that this violated the Fourth and Fourteenth Amendments to the United States Constitution and Section 10 of the Kentucky Constitution.

Plaintiff also states that Defendants McKinney and Healey brought false charges against him for fleeing and eluding police and for possession of a machine gun and silencer; that Defendants McKinney, Healey, and Sherrard brought false charges against him for trafficking; and that Defendants McKinney, Healey, and Wright brought false charges against him for resisting arrest.  He states these Defendants violated his due process rights.

Plaintiff states that police also wrongfully seized his leather jacket, work boots, $161.00, and personal papers.  He states that Defendant Healey was the lead detective and therefore responsible.  Plaintiff also states that the Jefferson Circuit Court has since released his property upon his motion.

Plaintiff further states, "The officers names appearing in the 'doctored' Administrative Incident Report were incomplete and lacked code numbers as required.  Obviously another method employed as a matter of course by the L.M.P.D. in order to hinder investigations by their

victims." He states that this violates due process requirements. He states that Defendants Stone, Pearson, Harder, and Buckner "failed to investigate either the alleged pursuit or the illegal use of force."

Plaintiff further states that "all involved officers, detective[s], their immediate supervisors (Defendants # 17, 18, 19, and 20)," as well as former Police Chief White, and Mayor Fischer "are responsible for all actions of their subordinate officers and employees." He states that supervisors "maintain a policy of cover[ing] up actions of their officers." Plaintiff states that officers have committed similar violations in the past and have not been properly disciplined and that officers are improperly trained. He states that supervisors Defendants Stone, Pearson, Harder, Buckner, White, and Fischer "are responsible as well as Louisville Metro Government, generally." He further states that "[a]ll persons in supervisory capacity (Defendants #17, 18, 19 and 20)," as well as "field training officers responsible for training those persons, the Police Chief . . . , his Assistant Chief and the department generally, as well as Louisville Metro Government and its Mayor . . . are guilty of deliberate indifference, failure to train and discipline officers and supporting policies of covering up police misconduct." He states that the foregoing actions violated the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

As relief, Plaintiff seeks $1.5 million in compensatory damages and $1.5 million in punitive damages; injunctive relief in the form of directing Defendants McKinney and Healey "to have no contact with the plaintiff[;]" payment of "all past and future medical and psychological expenses[;]" and reimbursement of all legal expenses.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any

portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a

claim upon which relief may be granted, or seeks monetary relief from a defendant who is

immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

In order to survive dismissal for failure to state a claim, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint

in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as

true." *Tackett v. M & G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing

*Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district

court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting

*Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent

standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21

(1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent'

with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*,

610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a

claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

6

To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.

*Police pursuit*

Plaintiff states that he was pursued in a reckless and dangerous manner by Defendant Wright and other officers in unmarked police vehicles. However, he does not state that he incurred any injury as a result of the police pursuit. In fact, he states that he was "clear of the motorcycle" before it rolled into a utility pole. The law has long been that "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986). Plaintiff does not allege that he suffered any injury from the police pursuit, and his claims related to the police pursuit therefore will be dismissed for failure to state a claim upon which relief may be granted.

*Excessive force*

Plaintiff also alleges that Defendant McKinney struck him on the head while he was handcuffed. He states that he was then placed by Defendants McKinney and Wright under an idling vehicle exposing him to exhaust fumes and causing burning in his eyes, skin, and lungs.

Plaintiff cites the Fourth, Eighth, and Fourteenth Amendments. However, the Eighth Amendment protects convicted prisoners from cruel and unusual punishment after conviction. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). The Fourteenth Amendment's due process clause protects state pretrial detainees from cruel and unusual punishment. *Spencer v. Bouchard*,

449 F.3d 721, 727 (6th Cir. 2006).  A claim of excessive force in the course of making an arrest invokes the protection of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.  *Graham v. Connor*, 490 U.S. at 395 (quoting U.S. CONST. amend. IV).  Since Plaintiff alleges excessive force in the course of his arrest, the Fourth Amendment applies to this action.

Upon review, the Court will allow Plaintiff's Fourth Amendment excessive force claims to go forward against Defendants McKinney and Wright in their individual and official capacities.

***Failure to intervene***

Plaintiff states that other officers stood by and watched the officers' use of excessive force and failed to intervene.  An officer who fails to act to prevent the use of excessive force may be held liable under 42 U.S.C. § 1983 when 1) the officer observed or had reason to know that excessive force would be or was being used; and 2) the officer had both the opportunity and the means to prevent the harm from occurring.  *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citing *Durham v. Nu'man*, 97 F.3d 862, 866 (6th Cir. 1996)); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982).

Upon review, the Court will allow Plaintiff's claims for failure to intervene to proceed against Defendants McKinney, Healey, Wright, Carthan, Browning, Sherrard, Fowler, Bottoms, Duncan, Eichberger, Frye, Lee, LeFlore, Morgan, and Walz in their individual and official capacities.

8

*Verbal abuse*

Plaintiff states that Defendants cursed at, threatened, and taunted him and placed him in fear of physical harm or death.  Mere verbal threats do not rise to the level of excessive force. *Williams v. Sandal*, 433 F. App'x 353, 362 (6th Cir. 2011); *see also Giese v. Wichita Police Dep't*, No. 94-3439, 1995 U.S. App. LEXIS 30927, at *2 (10th Cir. Oct. 30, 1995) ("Verbal threats during questioning also do not constitute the use of excessive force."); *Aderonmu v. Heavey*, No. 00 Civ. 9232, 2001 U.S. Dist. LEXIS 640, at *3 (S.D.N.Y. Jan 26, 2001) (interrogation at gun point does not amount to use of excessive force).  Therefore, Plaintiff's claims that Defendant verbally abused or threatened him will be dismissed for failure to state a claim.

*Medical treatment*

Plaintiff states that a nurse examined his rectum as police looked on and that detectives interfered with his medical treatment resulting in him not receiving treatment for his head injury.  However, he does not identify any of the individuals he claims are responsible for these actions.  To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains.  *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976).  Because Plaintiff does not identify the individuals responsible for these alleged actions, these claims will be dismissed for failure to state a claim.

Plaintiff states that Defendants Browning and Fowler called for EMS and lied about the origins of his injuries.  However, he does not state how calling for EMS and lying about how Plaintiff received his injuries resulted in denial of medical treatment or any other damages.  *See Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d at 659 (holding that "a violation of a

9

federally secured right is remediable in damages only upon proof that the violation proximately caused injury"). Therefore, the claims against Defendants Browning and Fowler related to Plaintiff's medical treatment will also be dismissed.

**_False arrest_**

Plaintiff also brings false-arrest claims against Defendants McKinney, Healey, Sherrard, and Wright. To the extent Plaintiff has been convicted of the charges which he claims were false, his false-arrest claims are barred by _Heck v. Humphrey_, 512 U.S. 477 (1994), wherein the Supreme Court recognized that a plaintiff may not file a § 1983 suit challenging the constitutionality of his conviction or sentence if a ruling on his claim would necessarily render the conviction or sentence invalid, until and unless the conviction or sentence has been reversed on direct appeal or overturned by other means. However, the Court having reviewed Plaintiff's conviction information on the Kentucky Online Offender Lookup, it is unclear whether the _Heck_ doctrine applies. Upon review, the Court will allow Plaintiff's false-arrest claims in violation of the Fourth Amendment to proceed against Defendants McKinney, Healey, Sherrard, and Wright in their individual and official capacities.

**_Illegal search_**

Plaintiff claims that Defendants Healey and Redfield conducted an illegal search of a residence without a warrant or consent. Once again, it is unclear whether the _Heck_ doctrine bars this claim. Upon review, the Court will allow Plaintiff's claim of an illegal search in violation of the Fourth Amendment and Section 10 of the Kentucky Constitution to proceed against Defendants Healy and Redfield in their individual and official capacities.

***Loss of personal property***

Plaintiff also claims that officers seized items of his personal property when he was arrested.  However, he states that the Jefferson Circuit Court later released his property upon his motion.  To the extent Plaintiff still seeks to assert a claim regarding the loss of his personal property, however, the Supreme Court has held that where adequate remedies are provided by state law, the loss of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *rev'd on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). In order to assert a claim for deprivation of property without due process under § 1983, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation.  *Parratt*, 451 U.S. at 543-44.  The law of this Circuit is in accord.  For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066.  The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*.  *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).  Therefore, Plaintiff's claim concerning his lost property will be dismissed for failure to state a claim upon which relief may be granted.

***Failure to investigate***

Plaintiff also alleges that Defendants Stone, Pearson, Harder, and Buckner failed to investigate Plaintiff's claims concerning the police pursuit or use of excessive force and that the Administrative Incident Report was inadequate.  However, private citizens have no

11

constitutional or federal statutory right to compel the investigation of another person.  *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Browder v. Parker*, No. 5:11CV-P29-R, 2011 U.S. Dist. LEXIS 64061, at *20 (W.D. Ky. Jun. 15, 2011); *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002).  Accordingly, Plaintiff's claims that Defendants failed to investigate his claims will be dismissed for failure to state a claim.

### *Failure to train*

Plaintiff also alleges that Defendant-supervisory-officers Harder, Stone, Pearson, and Buckner, as well as former LMPD Chief White and Mayor Fischer should be liable for failure to train officers.  The Sixth Circuit has found that an attempt to hold an officer liable in his individual capacity for his "alleged failure to adequately train employees . . . 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'" *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 543-44 (6th Cir. 2008)); *see also Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 845 (E.D. Tenn. 2011) ("A general 'failure to train' claim has been routinely rejected by the Sixth Circuit in this context (trying to impose liability on a supervisor in his or her individual capacity).").  Rather, a failure-to-train claim against a defendant in his individual capacity is properly deemed to be a claim against that defendant in his official capacity.  *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647-48 (6th Cir. 2012) (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (for the proposition that "where there is an absence of evidence of personal involvement in the underlying misconduct, failure-to-train claims against individual defendants are properly deemed to be brought against them in their official capacities and are treated as claims against the county")).

12

Therefore, the Court will allow Plaintiff's failure-to-train claims to proceed against Defendants Harder, Stone, Pearson, and Buckner, as well as former LMPD Chief White and Mayor Fischer in their official capacities only. The Court will dismiss the failure-to-train claims against these Defendants in their individual capacities.

***Supervisory authority***

Finally, Plaintiff claims that "all involved officers, detective[s], their immediate supervisors," as well as former Police Chief White and Mayor Fischer are responsible for the actions of subordinate officers. However, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Here, Plaintiff attempts to bring claims based merely on Defendants' supervisory authority. However, other than his allegations concerning failure to train addressed above, he fails to demonstrate facts showing that these Defendants participated in any alleged unconstitutional conduct. Accordingly, the claims under § 1983 against any Defendant based only on his or her supervisory authority will be dismissed for failure to state a claim upon which relief may be granted.

## IV.

For the reasons set forth herein, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that all claims related to the alleged police pursuit, verbal abuse, denial of medical treatment, loss of personal property, and failure to investigate Plaintiff's claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. **IT IS FURTHER ORDERED** that Plaintiff's individual-capacity claims alleging failure to train against Defendants Harder, Stone, Pearson, Buckner, White and Fischer are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. **IT IS FURTHER ORDERED** that all claims based only on any Defendant's supervisory authority are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will allow the following claims to proceed past initial screening:

1)      Excessive-force claims against Defendants McKinney and Wright in their individual and official capacities;

14

2)      Failure-to-intervene claims against Defendants McKinney, Healey, Wright, Carthan, Browning, Sherrard, Fowler, Bottoms, Duncan, Eichberger, Frye, Lee, LeFlore, Morgan, and Walz in their individual and official capacities;

3)      Illegal-search claims against Defendants Healey and Redfield in their individual and official capacities;

4)      False-arrest claims against Defendants McKinney, Healey, Sherrard, and Wright in their individual and official capacities;

5)      Failure-to-train claims against Defendants Harder, Stone, Pearson, Buckner, White and Fischer in their official capacities.

In allowing these claims to proceed, the Court passes no judgment on their ultimate outcome.

The Court will enter a separate Scheduling Order governing the development of the claims that have been permitted to proceed.

Date:

cc:      Plaintiff, *pro se*
         Defendants
         Jefferson County Attorney
4412.010